# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **RONALD CASTILLE JR.,** | § | |
| **Reg. No. 63882-280,** | § | |
| **Movant,** | § | |
| | § | **EP-12-CV-493-KC** |
| **v.** | § | **EP-10-CR-2157-KC-1** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

In a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence [ECF No. 89],[1] Movant Ronald Castille Jr. ("Castille") challenges his guilty-plea convictions for conspiracy to possess with intent to distribute one kilogram or more of phencyclidine ("PCP") and possession with intent to distribute one kilogram or more of PCP. Mindful of Castille's *pro se* status,[2] the Court understands him to assert a Border Patrol agent violated his Fourth Amendment rights by impermissibly extending the scope and duration of an immigration checkpoint stop by engaging in a drug investigation, and the Court erred by not suppressing the fruits of his illegal detention. Castille also maintains his trial and appellate counsel provided constitutionally ineffective assistance when they did not prevail on his suppression motion or direct appeal. Because it plainly appears from Castille's motion and the record that he is not entitled to § 2255

---

[1] "ECF No." in this context refers to the Electronic Case Filing number for documents docketed in EP-10-CR-2157-KC-1.

[2] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a *pro se* pleading to encompass any allegation which may raise a claim for federal relief).

relief, the Court will deny his motion.[3]  Additionally, the Court will deny Castille a certificate of appealability.

## FACTUAL AND PROCEDURAL HISTORY

On the morning of July 19, 2010, Border Patrol Agents Jose Pacheco ("Pacheco") and Manuel Padilla ("Padilla") manned the secondary lane of the Border Patrol checkpoint at Sierra Blanca, Texas.  At about 9:00 a.m., a Greyhound bus pulled into their lane for an immigration inspection.  Pacheco boarded the bus, made his way to the back, and started checking the passengers.  After inspecting about two rows, Pacheco encountered an African-American male, Andre Lewis ("Lewis").  Lewis claimed United States citizenship and, about thirty seconds into the encounter, agreed to let Pacheco look inside his luggage.  Lewis grabbed a bag from under his seat, put it on the seat next to him, and unzipped it.  Pacheco looked inside and saw several aluminum cans with Dole pineapple juice labels.  When Pacheco asked Lewis why he carried pineapple juice inside his suitcase, Lewis explained he was on his way to a family reunion and did not want to run out of juice.  Pacheco told Lewis to close the bag and continued inspecting the other passengers.

Pacheco examined two or three more rows of passengers before approaching another African-American male, Castille.  After brief questioning, Castille claimed United States citizenship and agreed to let Pacheco look inside his luggage.  Castille pulled a suitcase from underneath his seat and passed it to Pacheco.  Pacheco placed the suitcase on the aisle floor and, when he looked inside, observed more cans labeled Dole pineapple juice.  Pacheco motioned

---

[3] *See* 28 U.S.C.A. § 2255 Proc. R. 4(b) (West 2012) ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.").

toward Lewis and asked Castille if they were traveling together. Castille answered he traveled alone.

After inspecting the remaining passengers, Pacheco discussed the cans with Dole pineapple juice labels with Padilla. Padilla then ordered Lewis, Castille, and another African-American male off the bus with their luggage. After they placed their bags with other luggage in a bin under the bus, Border Patrol Agent Ruben Castillo ("Castillo") conducted a canine sniff with his narcotics-detecting dog. Castillo's dog alerted to the suitcases belonging to Lewis and Castille. Further investigation led to the discovery of a third suitcase filled with cans labeled Dole pineapple juice. Subsequent testing of the contents of the cans revealed they contained liquid PCP and codeine.

After Drug Enforcement Administration agents advised Castille of his rights, he admitted that all three suitcases belonged to him, and he verified the cans contained liquid PCP and codeine. Later, Castille provided further details regarding his drug trafficking activities.

A grand jury sitting in the Western District of Texas, El Paso Division, thereafter returned a two-count indictment against Castille and Lewis charging them with conspiracy to possess with the intent to distribute one kilogram or more of PCP, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iv) ("count one"), and possession with the intent to distribute one kilogram or more of PCP, in violation of §§ 841(a)(1) and 841(b)(1)(A)(iv) ("count two"). With the indictment, the United States of America ("the Government") filed an information indicating it would seek an enhanced punishment for Castille based on a prior state-court conviction for possession of a controlled substance.[4]

---

[4] *State v. Castille*, Cause No. 119087901010 (179th Dist. Ct., Harris Cnty. Tex. June 4, 2009).

Castille and Lewis moved to suppress all the evidence seized as a result of the Sierra Blanca checkpoint search. Castille argued the Government's agents searched his luggage without a warrant or legal authority:

> The Border Patrol lacked specific articulable facts that reasonably warranted suspicion that Defendant Castille was committing a crime. Furthermore, the detention of Defendant Castille, and other bus passengers, was not limited in scope to the justification of the stop. Therefore, it ripened into an illegal arrest, which was not reasonable. Accordingly, any evidence seized, pursuant to such unlawful search and seizure, is tainted and the use of same against Defendant Castille would violate his rights as guaranteed to him under the Fourth Amendment of the United States Constitution.[5]

After the Court denied their motion to suppress, both Castille and Lewis entered conditional guilty pleas to the indictment without the benefit of a plea agreement. The Court accepted the pleas and sentenced Castille to 240 months' imprisonment on each count, to be served concurrently, followed by ten years' supervised release. Castille timely filed a notice of appeal.

In his direct appeal, Castille argued the detention of the bus passengers by the Government's agents for a drug investigation was unreasonable under the Fourth Amendment because it went beyond the strict limits of a brief detention and questioning approved by the Supreme Court in *Martinez-Fuerte*.[6] Further, he asserted the Government's agents obtained his consent to a search of his luggage after the purpose of the immigration inspection had been

---

[5] Mot. to Suppress 1–2 [ECF No. 33].

[6] *United States v. Martinez–Fuerte*, 428 U.S. 543, 566–67 (1976) ("In summary, we hold that stops for brief questioning routinely conducted at permanent checkpoints are consistent with the Fourth Amendment and need not be authorized by warrant. The principal protection of Fourth Amendment rights at checkpoints lies in appropriate limitations on the scope of the stop. We have held that checkpoint searches are constitutional only if justified by consent or probable cause to search.") (citations omitted).

satisfied, in violation of the Fourth Amendment. Finally, he claimed the Court erred by not

suppressing all the evidence and other fruits of his illegal detention. In rejecting these

arguments, the Fifth Circuit Court of Appeals reasoned:

> Because the permissible duration of an immigration checkpoint stop includes the time necessary to inquire about citizenship status, request documentation, and request consent to extend the detention, the 30–second stop of each defendant in this case, during which Pacheco asked each defendant about his citizenship status and for consent to search, "lasted no longer than necessary to fulfill its immigration-related purpose." *See Machuca–Barrera*, 261 F.3d [425,] 429, 435 [(5th Cir. 2001)]; *see also United States v. Jaime*, 473 F.3d 178, 185–86 (5th Cir. 2006). The scope and duration of the immigration checkpoint stop remained valid even though Agent Pacheco had concluded that both Lewis and Castille were United States citizens before he asked for consent to search. *See Jaime*, 473 F.3d at 185. Furthermore, because the scope and duration of the immigration checkpoint stop were permissible, we will not inquire into Agent Pacheco's motivation in asking for consent to search. *See Machuca–Barrera*, 261 F.3d at 432–34. Finally, because Agent Pacheco requested consent to search during the course of his immigration inspection of the passengers on the bus, our decision in [*United States v.*] *Portillo–Aguirre*[, 311 F.3d 647, 651–52 (5th Cir.2002)] is inapplicable here. *See Jaime*, 473 F.3d at 185–88.[7]

In his instant petition, Castille maintains the Court erred by not suppressing the evidence

because, according to Castille, the Government's agents went beyond the strict limits of a brief

detention and questioning about his citizenship permitted by the law, and seized his person

without his consent or probable cause. He also claims his attorney provided constitutionally

ineffective assistance when he failed to argue in the motion to suppress that "because the stop

was for illegal immigrants the U.S. citizens on board were 'free to go' . . . [y]et, the officer . . .

detained the U.S. citizen[s]" by ordering them off the bus.[8]

---

[7] *United States v. Castille*, 478 F. App'x 868, at *1 (5th Cir. 2012).

[8] Mot. to Vacate 11.

# APPLICABLE LAW

*A.        28 U.S.C. § 2255*

After a defendant has been convicted and exhausted or waived any right to appeal, a court is normally "entitled to presume that the defendant stands fairly and finally convicted."[9] Accordingly, "'[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'"[10] Typically, before a court will grant relief pursuant to § 2255, the movant must establish that "(1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack."[11]

Ultimately, the movant bears the burden of establishing his claims of error by a preponderance of the evidence.[12] A court may deny a § 2255 motion, however, if "the files and records of the case conclusively show that the prisoner is entitled to no relief."[13] When a court finds that the movant is entitled to relief, it "shall vacate and set the judgment aside and shall

---

[9] *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (citing *United States v. Frady*, 456 U.S. 152, 164 (1982)).

[10] *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (quoting *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994)).

[11] *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).

[12] *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

[13] 28 U.S.C.A. § 2255(b) (West 2012); *see also United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990) ("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence–and not necessarily direct evidence–that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[14] Thus, the Court has "'broad and flexible power' . . . 'to fashion an appropriate remedy.'"[15]

Moreover, a collateral challenge to a conviction or sentence may not serve as a substitute for a direct appeal.[16] When raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief, a movant must either (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error, or (2) show that he is "actually innocent" of the crime for which he was convicted.[17] The cause-and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . . applied on direct appeal."[18] When the alleged error is not of constitutional or jurisdictional magnitude, "the defendant must show that the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice."[19] If the movant does not meet the

_____

[14] 28 U.S.C.A. § 2255(b).

[15] *United States v. Stitt*, 552 F.3d 345, 355 (4th Cir. 2008) (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997); *see also Andrews v. United States*, 373 U.S. 334, 339 (1963) ("[T]he provisions of the statute make clear that in appropriate cases a § 2255 proceeding can also be utilized to provide a . . . flexible remedy."); *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000) ("As an initial matter, we note the broad leeway traditionally afforded district courts in the exercise of their § 2255 authority. . . . This is so because a district court's power under § 2255 'is derived from the equitable nature of habeas corpus relief.'") (quoting *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997)).

[16] *Frady*, 456 U.S. at 165; *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991).

[17] *United States v. Torres*, 163 F.3d 909, 911 (5th Cir. 1999).

[18] *Gaudet*, 81 F.3d at 589.

[19] *Shaid*, 937 F.2d at 232 n.7.

appropriate burden, then he is procedurally barred from attacking his conviction or sentence.[20]

### B.    *Ineffective Assistance of Counsel*

The United States Constitution's Sixth Amendment guarantees an accused the right to the assistance of counsel for his defense in all criminal prosecutions.[21]  Moreover, "the right to counsel is the right to the effective assistance of counsel."[22]  "[I]neffective assistance claims are ordinarily brought for the first time on collateral review because of the difficulty of compiling an adequate record by the time of direct appeal."[23]  To merit relief on an ineffective assistance of counsel claim, a movant must demonstrate both (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense."[24]  A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.[25]

The test's performance prong centers on whether counsel's assistance was reasonable,

---

[20] *United States v. Drobny*, 955 F.2d 990, 994–95 (5th Cir. 1992).

[21] U.S. Const. amend. VI.

[22] *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

[23] *Gaudet*, 81 F.3d at 589 n.5.

[24] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review).

[25] *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

considering all the circumstances at the time of counsel's conduct.[26]  In order to obtain relief, a movant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[27]  In assessing whether a particular counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[28]  A deficiency in counsel's performance, even if professionally unreasonable, does not equal ineffective assistance of counsel; the movant must also demonstrate actual prejudice.[29]  The test's prejudice prong requires the movant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[30]

    With these principles in mind, the Court turns to the merits of Castille's claims.

## ANALYSIS

### A.    Forth Amendment Claim

---

[26] *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").

[27] *Id*. at 687.

[28] *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[29] *See id*. at 691–92 ("The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").

[30] *Id*. at 694.

In his motion, Castille first argues the Border Patrol agents violated his Fourth Amendment rights when, after determining his citizenship, they ordered him from the bus:

> In this case the search was not on the boarder [sic] and unrelated to U.S. citizens other than to establish their citizenship. Removing a U.S. citizen from the bus in the middle of the country was not their job status. . . . The Boarder [sic] patrol agent ordered the defendant to leave the bus, seizing him, without any probable cause to believe a crime is in progress.[31]

The record shows Castille raised his Forth Amendment claim in both a pre-trial motion to suppress and on direct appeal. After conducting an evidentiary hearing on Castille's motion to suppress, the Court found the immigration stop was lawful, the search was consensual, and the agent's suspicion was reasonable:

> that the scope of the defendant's respective inspections did not exceed the bounds of a lawful immigration stop[,] . . . that during the course of the immigration inspections, both defendants clearly consented to further inspection[, . . . that] the consent given by the defendants was, in fact, voluntarily given, not the result of duress or coercion, express or implied, and that routine questioning of the defendants generated a reasonable suspicion of other criminal activities.[32]

After reviewing the record, the Fifth Circuit also determined "[t]he scope and duration of the immigration checkpoint stop remained valid even though Agent Pacheco had concluded that both Lewis and Castille were United States citizens before he asked for consent to search."[33]

A court may dismiss, without reconsideration of the merits, claims that have been raised and considered on direct appeal unless immediate disposal of the issue would be a disservice to

---

[31] Mot to Vacate 4–5.

[32] Hearing Tr. for Mot. to Suppress 77–78 [ECF No. 52].

[33] *Castille*, 478 F. App'x 868, at *1.

the ends of justice.[34]  The Court and the Fifth Circuit have already carefully considered Castille's Fourth Amendment claim.  Immediate disposal is accordingly appropriate.  Moreover, a Fourth Amendment claim is barred on collateral review if the petitioner had a full and fair opportunity to litigate the claim in pre-trial proceedings and on direct appeal.[35]  Here, it is undisputed that Castille had a full and fair opportunity to litigate his Fourth Amendment claim both before trial and on direct appeal.  Consequently, Castille is foreclosed from raising his Fourth Amendment claim on collateral review.

### B.        *Ineffective Assistance of Counsel Claim*

Castille also claims his trial and appellate counsel provided ineffective assistance when they failed to argue "there was not probable cause to believe that there [was] contraband or illegal merchandise . . . of a crime [was] taking place," and his seizure by the Border Patrol agents violated his Fourth Amendment rights.[36]  The record contradicts Castille's assertion.  It shows Castille's trial counsel unsuccessfully argued the immigration stop "ripened into an illegal arrest, which was not reasonable.  Accordingly, any evidence seized, pursuant to such unlawful search and seizure, is tainted and the use of same against Defendant Castille would violate his rights as guaranteed to him under the Fourth Amendment of the United States Constitution."[37]  Moreover, it shows his appellate counsel unsuccessfully argued "[t]he instant Agent Pacheco

---

[34] *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

[35] *United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003) (extending *Stone v. Powell*, 428 U.S. 465, 494 (1976), to a § 2255 case).

[36] Mot. to Vacate 10–11.

[37] Mot. to Suppress 1–2.

completed the immigration inspection and satisfied himself that all passengers, including . . .

Castille, were in the United States lawfully, Agent Pacheco's authority to detain the bus and

passengers expired."[38]  Constitutionally effective assistance of counsel is "not errorless counsel,

and not counsel judged ineffective by hindsight."[39]  The Constitution does not vest a movant with

a valid ineffective-assistance-of-counsel claim simply as a consequence of his counsel having

employed an unsuccessful defense.  After examining "the totality of facts in the entire record,"

the Court finds Castille cannot show his counsels' performance was either deficient or prejudiced

his cause.[40]  He is not, therefore, entitled to § 2255 relief on this claim.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion, files, and

records of the case conclusively show that the defendant is not entitled to relief.[41]  The record in

this case is adequate to dispose fully and fairly of Castille's claims.  The Court need inquire no

further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit

---

[38] Appellant's Br. 16, No. 11-50678 (5th Cir. filed Dec. 7, 2011).

[39] *Herring v. Estelle*, 491 F.2d 125, 127 (5th Cir.1974).

[40] *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983) (quoting *Gray v. Lucas*, 677 F.2d 1086, 1092 (5th Cir.1982).

[41] *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself).

justice or judge issues a certificate of appealability."[42]  A certificate of appealability "may issue ...

only if the applicant has made a substantial showing of the denial of a constitutional right."[43]  In

cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he

petitioner must demonstrate that reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong."[44]  To warrant a grant of the certificate as to claims

that the district court rejects solely on procedural grounds, the movant must show both that

"jurists of reason would find it debatable whether the petition states a valid claim of the denial of

a constitutional right and that jurists of reason would find it debatable whether the district court

was correct in its procedural ruling."[45]  Here, Castille's motion fails because he raised the same

claims in his direct appeal and he has not made a substantial showing of the denial of a

constitutional right.  Accordingly, the Court finds it should deny Castille a certificate of

appealability.

## CONCLUSION AND ORDERS

Therefore, for the reasons stated above, the Court concludes it should deny Castille's

motion and dismiss his civil cause.  The Court further concludes that Castille is not entitled to a

certificate of appealability.  Accordingly, the Court enters the following orders:

1. Movant Ronald Castille Jr.'s *pro se* motion under 28 U.S.C. § 2255 to vacate, set

---

[42] 28 U.S.C.A. § 2253(c)(1)(B) (West 2012).

[43] *Id*. § 2253(c)(2).

[44] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings).

[45] *Slack*, 529 U.S. at 484.

aside, or correct a sentence [ECF No. 89] is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE**.

2.  Movant Francisco Ronald Castille Jr. is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

3.  All pending motions in this cause, if any, are **DENIED AS MOOT.**

**SO ORDERED.**

**SIGNED** this 20th day of **December 2012**.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE